IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

EVELYN S. ROOKE,
    Plaintiff,

vs.                                   Case No. 3:07cv308/RV/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
    Defendant.
_____/

## **REPORT AND RECOMMENDATION**

    This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act (Act) and related statutes, 42 U.S.C. § 401, *et seq*. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) under Title II of the Act, 42 U.S.C. §§ 401–34, and for Supplemental Security Income benefits (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

    Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.    PROCEDURAL HISTORY

    This suit involves Plaintiff's application for DIB, filed August 21, 2001, and her application for SSI, also filed on August 21, 2001, but with a protective filing date of August 15, 2001 (*see* Tr.

53–55, 328–30).[1] Plaintiff's applications were denied initially and on reconsideration (Tr. 26, 28). On September 26, 2003, following a hearing, an administrative law judge (ALJ) rendered a decision in which he found that Plaintiff was not eligible for Social Security benefits (Tr. 12–22). On January 28, 2004, the Appeals Council of the Social Security Administration denied Plaintiff's request for review (Tr. 3–5), and Plaintiff then sought review in this court (*see* Case No. 3:04cv86/MCR/MD).

On October 6, 2004, based upon the Commissioner's motion to remand, Plaintiff's case was reversed and remanded to the Commissioner for further administrative proceedings (*see* Case No. 3:04cv86/MCR/MD ( Docs. 12, 13, 14)). Next, pursuant to this court's order, the Appeals Council remanded Plaintiff's case to an ALJ for further assessment and a new decision (*see* Tr. 391–94). After a second hearing held February 11, 2005, the ALJ issued another decision, on June 24, 2005, again finding that Plaintiff was not disabled (Tr. 369–81). On May 22, 2007, the Appeals Council denied Plaintiff's request for further review (Tr. 351). Thus, the second decision of the ALJ now stands as the final decision of the Commissioner, subject to review in this court. Falge v. Apfel, 150 F.3d 1320 (11th Cir. 1998). This appeal followed.

II.     FINDINGS OF THE ALJ

On June 24, 2005, the ALJ made several findings relative to the issues raised in this appeal (*see* Doc. 13 at 1, 4–5; Tr. 369–81):

1)   Plaintiff has not engaged in substantial gainful activity since July 6, 2001, the date she alleges she became disabled.

2)   Plaintiff has severe physical and mental impairments. These include hypertension, lumbosacral sprain, carpal tunnel syndrome of the right upper extremity, cervical degenerative disc disease, cervical spur disc complex and eccentric extradural defect at C4-5, and diabetes mellitus (physical), as well as major depressive disorder and personality disorder (mental). However, Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to ones listed in Appendix 1 to Subpart P of Regulation No. 4.

3)   Plaintiff's allegations regarding her limitations are not entirely credible.

---

[1] All references to "Tr." refer to the Transcript of Social Security Administration Record filed on October 15, 2007 (Docs. 10, 11).

4) Plaintiff's impairments prevent her from performing her past relevant work, but she retains the residual functional capacity (RFC) for light, unskilled work.

5) Plaintiff is able to perform jobs existing in significant numbers in the national economy, and Plaintiff has therefore not been under a disability at any time through June 24, 2005, the date of the ALJ's second decision.

III. STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance, it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g),[2] the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, she is not disabled.

2. If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3. If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5. Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must

---

[2]In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416). Therefore, hereafter, citations in this report and recommendation should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

then prove she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.    RELEVANT PERSONAL HISTORY, PHYSICAL AND MENTAL LIMITATIONS, AND TESTIMONY OF THE VOCATIONAL EXPERT[3]

   A.    Personal History

Plaintiff was born on August 11, 1957, and was 44 years of age on July 6, 2001, the date she alleges she became disabled.  Plaintiff has a high school education and attended one year of college.  She has past relevant work experience as a certified nursing assistant (CNA) and cashier.  Plaintiff was insured for a period of disability and DIB through December 31, 2006, but not thereafter.

   B.    Plaintiff's Limitations

In determining that Plaintiff's mental impairments are severe, the ALJ noted that Plaintiff has the following mental limitations: "mild" restriction in activities of daily living, "mild" difficulties in maintaining social functioning, and "moderate" difficulties in maintaining concentration, persistence or pace (with no evidence of decompensation) (Tr. 377; Doc. 13 at 7).

Later in the ALJ's decision, in determining Plaintiff's RFC, the ALJ concluded that Plaintiff retains the RFC to perform light exertional activity with the following physical limitations: only occasional handling or fingering with the non-dominant right hand; occasional climbing, balancing, stooping, kneeling, crouching, crawling, and reaching overhead; and avoiding dangerous machinery and heights (*see* Tr. 379; Doc. 13 at 6–7).  With regard to Plaintiff's mental limitations, the ALJ noted that Plaintiff is precluded from skilled work "by her mental condition and her mild to moderate concentration limits attributable to her medications," but she retains the RFC to perform unskilled work (Tr. 379).

   C.    Testimony of the Vocational Expert (VE)

During the administrative hearing held on February 11, 2005, the ALJ elicited testimony from a VE (Tr. 455–62).  The VE first identified Plaintiff's past work as a CNA, which is semi-

---

[3]Unless otherwise noted, the information in this section is derived from Plaintiff's memorandum in support of her complaint (Doc. 13).  Additionally, it should be noted that the record contains evidence regarding Plaintiff's physical impairments, but Plaintiff has raised no issue in the instant appeal regarding the ALJ's consideration of her physical impairments.  Thus, the summary of Plaintiff's medical history does not include evidence regarding her physical impairments unless relevant to the issues in this case.

skilled and performed at the medium level of exertion, and as a cashier, which is classified as "light" and unskilled to semi-skilled, depending on the nature of the position (*see* Tr. 456–57). The ALJ then posed a hypothetical question to the VE, in which the VE was asked to assume a hypothetical person of the same age, and with the same educational and vocational profile of Plaintiff (Tr. 457). The ALJ asked the VE to further assume that the hypothetical individual is limited to no more than light work that would require only occasional climbing, balancing, stooping, kneeling, crouching, crawling, and overhead reaching (Tr. 457–58). The ALJ also incorporated into his hypothetical question that the hypothetical person should avoid dangerous machinery and heights, should only occasionally handle and finger with the right hand, and would be limited to unskilled work due to pain and "other factors" (Tr. 458). The VE testified that such a hypothetical individual could not perform Plaintiff's past work as a cashier because handling, fingering, and reaching would be required on a frequent basis (*id.*). However, the VE opined that such an individual could perform other jobs existing in significant numbers in the national economy, such as a photo finishing counter clerk (PFCC), DOT# 249.366-010, and a scaling machine operator (SMO), DOT# 521.685-386[4] (Tr. 459).

The VE further noted that although the PFCC job would require "some" interaction with the public, neither the PFCC job nor the SMO job would require "more than occasional interaction with supervisors" (*id.*). Regarding whether there would be more than occasional "work pressure" with either job, the VE testified that there could be some with the PFCC job in dealing with the public if, for example, work was displaced or not ready when a customer appeared to pick it up, and some with the SMO job because the "individual would be required to keep up a production pace" (*see* Tr. 460).

Based on the VE's testimony, the ALJ found Plaintiff "not disabled" at the fifth step of the sequential evaluation process, finding that Plaintiff could perform both the PFCC and SMO jobs (Tr. 379–81).

---

[4]The VE identified the DOT code as 321.685-386 (*see* Tr. 459), but the actual DOT code for scaling machine operator is 521.685-386 (*see, e.g.*, http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT05B.HTM) (last visited August 7, 2008).

Case No. 3:07cv308/RV/EMT

V.	DISCUSSION

    A.	Plaintiff's Issue on Appeal

Plaintiff raises one issue in the instant appeal.  Plaintiff contends the ALJ erred by failing to incorporate pertinent findings in the hypothetical questions posed to the VE (Doc. 13 at 8–10).  Specifically, Plaintiff contends the ALJ erred by failing to incorporate his finding that Plaintiff has "moderate" difficulties in maintaining concentration, persistence or pace (Doc. 13 at 8).  Plaintiff points to the testimony of the VE that the SMO job requires an individual to keep up a production pace, and she asserts that a "moderate limitation in maintaining attention, concentration or pace would significantly limit a person's ability to perform a job that requires [such] a production pace" (*id.*).

    B.	Controlling Law

A hypothetical question must comprehensively describe a plaintiff's condition, and vocational expert testimony that does not accurately address that condition cannot be considered substantial record evidence.  Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985).  However, the ALJ is not required to include findings in the hypothetical that he has properly rejected as unsupported.  *See* McSwain v. Bowen, 814 F.2d 617, 620 n.2 (11th Cir. 1987)

    C.	Pertinent Evidence and Findings of the ALJ

Before addressing Plaintiff's lone contention on appeal, it is worth noting that the transcript in this case is 460 pages in length, and the ALJ's opinion is 13 pages in length, yet Plaintiff makes no argument related to the majority of the ALJ's analysis of her medical records, subjective complaints, credibility, and other factors.  Thus, for example, Plaintiff does not contest the ALJ's finding that a licensed mental health counselor's July 2001 opinion did not establish disability, because the counselor is not considered "an acceptable medical source," and her opinion did not indicate that Plaintiff's condition (i.e., major depression) would have lasted twelve continuous months had Plaintiff been compliant with treatment (*see* Tr. 374).  Moreover, although Plaintiff was referred to an ARNP in August 2001, who also assessed major depression, Plaintiff does not contest the ALJ's finding that Plaintiff's depression was relieved by medication as of October 2001 (*id.*).  The ALJ specifically noted that on a follow-up visit, in December 2001, Plaintiff reported that the medication dose "seemed just right and she felt much less depressed" (*id.*).  "A medical condition

that can reasonably be remedied either by surgery, treatment, or medication is not disabling." Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) (citation omitted). The ALJ also noted that Plaintiff "dropped out of [mental health] treatment" altogether after December 2001 (Tr. 374; *see also* Tr. 297). *See, e.g.*, Williams v. Sullivan, 960 F.2d 86, 89 (8th Cir. 1992) (absence of treatment indicates that a mental impairment is non-severe); *see also* Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995) (failure to seek medical treatment for a long time during a claimed period of disability tends to indicate tolerable pain).

Additionally, the ALJ thoroughly discussed the results of a consultative psychological evaluation by Lynn E. Lightfoot, PhD, conducted on November 21, 2002 (Tr. 297–300). During the evaluation, Plaintiff claimed that she was so overwhelmed that she no longer tried to keep up with current events, and therefore, she could not name the President of the United States or state how many weeks are in a year, asserting that "these things are 'unimportant'" (Tr. 298–99, 375). As noted by the ALJ, based on this and other observations, Dr. Lightfoot opined that Plaintiff was exaggerating, and she "was determined to be non-cooperative and resistive" during the evaluation (Tr. 298, 376). It was also noted by both the ALJ and Dr. Lightfoot that Plaintiff provided inconsistent information during the evaluation, such as the nature of her past work and whether she engaged in social activities (*see id.*), and Dr. Lightfoot observed that Plaintiff's arithmetic skills were "inconsistent when she was asked to demonstrate her ability" (Tr. 299). Although Dr. Lightfoot ultimately opined that Plaintiff would have some "moderate" (and even "marked") difficulties at work (*see, e.g.*, Tr. 302), the ALJ discounted these opinions based on Plaintiff's lack of forthrightness and cooperation with Dr. Lightfoot, as well as the "inconsistent" information she provided, which made the results of the Dr. Lightfoot's examination "suspect" (Tr. 376). The ALJ was permitted to discount the opinions of Dr. Lightfoot, a one-time consultative examiner, based upon these reasons. *See* Gaddis v. Chater, 76 F.3d 893, 895–96 (8th Cir. 1996) (strong element of secondary gain in plaintiff's conduct belies his sincere belief that he is truly disabled and unable to perform any substantial gainful activity); *see also* Frey v. Bowen, 816 F.2d 508, 516 (10th Cir. 1987) (citing Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984) (subjective complaints must be evaluated with due consideration for credibility, motivation, and medical evidence); Sellers v. Barnhart, 246 F. Supp. 2d 1201, 1213 (M.D. Ala. 2002) (malingering constituted substantial

evidence upon which the ALJ could base his decision to discredit Plaintiff's subjective complaints of pain). Moreover, as noted by the ALJ, even if the ALJ fully agreed with the opinions of Dr. Lightfoot, the definitions of the terms "moderate" and "marked," that he relied upon in forming his opinions, would not preclude Plaintiff from working (Tr. 377; *see also* Tr. 301 (defining the term "moderate," on the form used by Dr. Lightfoot, as limited but still able to function satisfactorily, and defining "marked" as limited, but "ability to function . . . is not precluded")). Finally, as already noted, Plaintiff does not contest the ALJ's discounting of Dr. Lightfoot's opinion.

Furthermore, as noted by the Commissioner (*see* Doc. 16 at 2) and the ALJ (Tr. 372), Plaintiff originally alleged disability as of July 6, 2001, on the basis of tendinitis, arthritis, problems with her spine, and a deteriorating knee cap, not as the result of a mental impairment (*see also* Tr. 79). Moreover, the ALJ noted that Plaintiff reported "depressive symptoms dating back eleven (11) years, a time frame during which she worked consistently" (Tr. 377). *See* Goff v. Barnhart, 421 F.3d 785, 792–93 (8th Cir. 2005) (fact that claimant gainfully worked with her impairment, coupled with the absence of evidence of significant deterioration in her condition, demonstrates that her impairments are not disabling in the present).

Finally, the ALJ concluded his discussion of Plaintiff's mental heath treatment in a paragraph in his decision that contained the following statement: "The record demonstrates that [Plaintiff] sought psychiatric treatment on approximately three occasions in 2001 . . . ; however, [Plaintiff's] treatment was short-lived and she never returned for any mental health treatment." (Tr. 377).

D.   Analysis

The ALJ's finding that is at issue in this case (i.e., that Plaintiff has "moderate" difficulties in maintaining concentration, persistence or pace) was made during the ALJ's discussion at step two, in finding Plaintiff's mental impairments severe (*see* Tr. 377).[5] In other words, the ALJ found that

---

[5]The Regulations require that mental impairments be evaluated in accordance with 20 C.F.R. § 404.1520a, which describes a "special technique" requiring the ALJ to first evaluate "your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s). . . ." 20 C.F.R. § 404.1520a(b)(1). If a medically determinable impairment is found to exist, the ALJ must then determine whether the impairment is severe. To determine whether a mental impairment is severe, the ALJ must evaluate the degree of functional loss resulting from the impairment in the four areas of: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c). The regulations set forth a five-point scale to rate the degree of limitation in the first three functional areas (none, mild, moderate, marked, and extreme) and a four-point scale to rate the degree of limitation in the fourth functional area (none, one or two, three, four or more). If the degree of limitation in the first three areas is "none" or "mild," and "none" in the fourth

Plaintiff has severe mental impairments <u>because</u> she has "moderate" difficulties in maintaining concentration, persistence or pace. The ALJ then found at step three that Plaintiff's impairments do not meet or equal a listed impairment (*see* Tr. 377), and he proceeded to step four, to determine Plaintiff's RFC. *See* 20 C.F.R. § 404.1520 ("At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . ."). At step four, in pertinent part, the ALJ noted:

> After careful consideration of the entire record, the undersigned finds that [Plaintiff] retains the [RFC] to perform light exertional activity . . . . [Plaintiff] is precluded from skilled work by her mental condition and her mild to moderate concentration limits . . . . She is capable of unskilled work. The [ALJ] notes in passing that [Plaintiff] has been able to engage in semi-skilled work in the past while suffering from her mental condition. The [ALJ] finds this [RFC] to be supported by the objective medical findings.

(Tr. 379).

The ALJ further found, at step four, that Plaintiff cannot return to her past relevant work because her prior work was semi-skilled, and Plaintiff is limited to unskilled work (<u>because of her mental limitations</u>) (*see* Tr. 379). Then at step five, in determining that Plaintiff could perform other available work in the national economy, the ALJ relied on the VE's testimony that specifically required the VE to identify <u>only</u> unskilled jobs.

      The restriction to unskilled work only, within the ALJ's hypothetical questions, was based upon and fully took into account the ALJ's finding at step two that Plaintiff suffered from moderate concentration limitations. Stated another way, the term unskilled "comprehensively described" Plaintiff's mental condition and fully incorporated the ALJ's pertinent findings with regard to her mental condition. *Compare* 20 C.F.R. § 404.1568(a) (noting, in pertinent part, that "[u]nskilled work is work which needs little or no judgment to do simple duties") *with* § 404.1568(b) (noting, in part, that "[s]emi-skilled jobs may require alertness and close attention") *and* § 404.1568(c) (noting, in part, that "[s]killed work requires qualifications in which a person uses judgment . . . [and] may require dealing with people, facts, or figures or abstract ideas at a high level of

---

area, an ALJ may properly find that a mental impairment is non-severe, provided there is no evidence to the contrary. *See* 20 C.F.R. § 404.1520a(d)(1).
Case No. 3:07cv308/RV/EMT

complexity). Therefore, the ALJ did not err in relying on the VE's testimony and finding that Plaintiff could perform at least two available unskilled jobs.

Although the undersigned has concluded that the ALJ did not err, two additional points are worth noting. First, the court notes that although the VE testified that the SMO job requires an individual to keep up a production pace, the VE made no such observation regarding the PFCC job (*see* Tr. 460). Indeed, the VE noted that the PFCC job is "generally not a very busy job" (*id.*). Moreover, the DOT defines the job as follows:

> [A PFCC] [r]eceives film for processing, loads film into equipment that automatically processes film for subsequent photo printing, and collects payment from customers of photofinishing establishment: Answers customer's questions regarding prices and services. Receives film to be processed from customer and enters identification data and printing instructions on service log and customer order envelope. Loads film into equipment that automatically processes film, and routes processed film for subsequent photo printing. Files processed film and photographic prints according to customer's name. Locates processed film and prints for customer. Totals charges, using cash register, collects payment, and returns prints and processed film to customer. Sells photo supplies, such as film, batteries, and flashcubes.

U.S. Department of Labor, DICTIONARY OF OCCUPATIONAL TITLES, Appx. C at IV(c) (4th ed. 1991) (# 249.366-010 (COUNTER CLERK (photofinishing)).[6]

Thus, even if the ALJ had erred in finding that Plaintiff could perform the job of SMO, the ALJ did not err in finding that Plaintiff could perform the PFCC job, which is "generally not very busy," does not require a production pace, and as described *supra*, does not require mental abilities beyond Plaintiff's RFC. As noted by the Eighth Circuit, "If, after reviewing the record as a whole, we find that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the Commissioner's decision." Masterson v. Barnhart, 363 F.3d 731, 736 (8th Cir. 2004) (citing Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)).

Second, the court notes that Plaintiff's attorney appeared with her at her hearing before the ALJ, and he was given an opportunity to question the VE after the VE testified that Plaintiff could

---

[6]In determining whether work exists in the national economy, the Social Security Administration takes "administrative notice of reliable job information available from various governmental and other publications," including the DOT, published by the Department of Labor. 20 C.F.R. § 404.1566(d).

Case No. 3:07cv308/RV/EMT

perform the jobs of SMO and PFCC, and after the VE noted potential problems with the ability to keep up with a production pace in the SMO job (*see* Tr. 459–61). Plaintiff's attorney then asked the VE to consider the opinions of Dr. Lightfoot and inquired whether, if those opinions were fully accepted, Plaintiff would be able to perform either job (Tr. 462). The VE answered, "probably not," based on Dr. Lightfoot's opinion that Plaintiff would be "markedly" limited in the areas of interacting appropriately with supervisors and responding appropriately to work pressures in a usual work setting (*id.*). Plaintiff's attorney, however, does not contest in the instant appeal the ALJ's discounting of Dr. Lightfoot's opinion, including the ALJ's finding that the definitions of "moderate" and "marked" relied upon by Dr. Lightfoot would not preclude work. Moreover, when given a chance to question the VE, Plaintiff's attorney did not ask about any potential problem with regard to the production pace requirements of the SMO job, and he has raised the issue for the first time in the instant appeal. *See* White v. Astrue, 240 Fed. Appx. 632, 634 (5th Cir. 2007) (citing Carey v. Apfel, 230 F.3d 131, 146–47 (5th Cir. 2000) ("claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing")).

VI.   RECOMMENDATION

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at 1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 12th day of August 2008.

>   /s/ *Elizabeth M. Timothy*
>   **ELIZABETH M. TIMOTHY**
>   **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Any objections to these proposed recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.**  *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**